[No. A035307. First Dist., Div. Two. Aug. 20, 1987.]

NAPA VALLEY EDUCATORS' ASSOCIATION et al., Plaintiffs and Appellants, v.
NAPA VALLEY UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

244

---

**COUNSEL**

Franklin Silver and Beeson, Tayer, Silbert & Bodine for Plaintiffs and Appellants.

Gloria M. Beutler for Defendant and Respondent.

Louis T. Lazano, Barbara J. Booth, Breon, Galgani, Godino & O'Donnell, Joseph R. Symkowick and Barry A. Zolotar as Amici Curiae on behalf of Defendant and Respondent.

---

**OPINION**

**KLINE, P. J.**—This appeal presents a question of interpretation of two sections of the Education Code relating to compensation of employees absent from their duties because of illness or injury. Education Code section 44977 provides that certificated employees who are absent from duty for a

period of five months or less because of illness or accident are to be paid at least the difference between their salary and the amount paid to the substitute who replaces them (differential pay).[1] Section 44978 provides that such employees are to receive 10 days of sick leave at full pay each year, which may accumulate if not taken, and that the provisions of section 44977 are not to apply to the first 10 days of absence due to illness or accident.[2]

---

[1] Education Code section 44977: "When a person employed in a position requiring certification qualifications is absent from his duties on account of illness or accident for a period of five school months or less, whether or not the absence arises out of or in the course of the employment of the employee, the amount deducted from the salary due him for any month in which the absence occurs shall not exceed the sum which is actually paid a substitute employee employed to fill his position during his absence, or, if no substitute employee was employed, the amount which would have been paid to the substitute had he been employed. The school district shall make every reasonable effort to secure the services of a substitute employee. [¶] The governing board of every school district shall adopt a salary schedule for substitute employees. The salary schedule shall indicate a salary for a substitute for all categories or classes of certificated employees of the district. [¶] Excepting in a district the governing board of which has adopted a salary schedule for substitute employees of the district, the amount paid the substitute employee during any month shall be less than the salary due the employee absent from his duties. [¶] When a person employed in a position requiring certification qualifications is absent from his duties on account of illness for a period of more than five school months, or when a person is absent from his duties for a cause other than illness, the amount deducted from the salary due him for the month in which the absence occurs shall be determined according to the rules and regulations established by the governing board of the district. Such rules and regulations shall not conflict with rules and regulations of the State Board of Education. [¶] Nothing in this section shall be construed so as to deprive any district, city, or city and county of the right to make any reasonable rule for the regulation of accident or sick leave or cumulative accident or sick leave without loss of salary for persons acquiring certification qualifications. [¶] This section shall be applicable whether or not the absence from duty is by reason of a leave of absence granted by the governing board of the employing district."

All further statutory references will be to the Education Code unless otherwise specified.

[2] Section 44978: "Every certificated employee employed five days a week by a school district shall be entitled to 10 days' leave of absence for illness or injury and such additional days in addition thereto as the governing board may allow for illness or injury, exclusive of all days he is not required to render service to the district, with full pay for a school year of service. A certificated employee employed for less than five schooldays a week shall be entitled, for a school year of service, to that proportion of 10 days' leave of absence for illness or injury as the number of days he is employed per week bears to five and is entitled to such additional days in addition thereto as the governing board may allow for illness or injury to certificated employees employed for less than five schooldays a week. Pay for any day of such absence shall be the same as the pay which would have been received had the employee served during the day. Credit for leave of absence need not be accrued prior to taking such leave by the employee and such leave of absence may be taken at any time during the school year. If such employee does not take the full amount of leave allowed in any school year under this section the amount not taken shall be accumulated from year to year with such additional days as the governing board may allow. [¶] The governing board of each school district shall adopt rules and regulations requiring and prescribing the manner of proof of illness or injury for the purposes of this section. Such rules and regulations shall not discriminate against evidence of treatment and the need therefor by the practice of the religion of any well-recognized church or denomination. [¶] Nothing in this section shall be deemed to modify or repeal any provi-

Appellants Napa Valley Educators' Association (NVEA) and Robert Hampel sought a writ of mandate to determine that the time period for differential pay under section 44977 runs consecutively to, rather than concurrently with, the period of accumulated sick leave under section 44978. The trial court denied the writ. We affirm, and hold that the period for differential pay begins immediately after exhaustion of a teacher's 10 days of current annual sick leave.

### STATEMENT OF FACTS

Robert Hampel, a classroom teacher, has been employed as a certificated employee by the Napa Valley Unified School District (District) since 1963. As of the beginning of the 1984-1985 school year, he had accumulated 134 days of sick leave.[3] Prior to the school year, Hampel developed a condition diagnosed as ankylosing spondylitis and, upon his physician's recommendation, requested an indefinite leave of absence. Hampel's leave lasted the entire school year; he returned to teaching duties for the 1985-1986 school year. Pursuant to policy, the District paid Hampel his full salary for the period of his accumulated sick leave and counted the period of differential pay from the end of his 10 days annual sick leave. Accordingly, the period for which Hampel would have been entitled to differential pay was exhausted while he was receiving full pay on sick leave and Hampel received no compensation after this period, which extended from April 10 until June 14, 1985.

The collective bargaining agreement in effect between the District and NVEA provides for five months of differential pay as defined in section 44977, but also guarantees that the absent employee be paid at least 50 percent of regular salary during the period of absence. Both before and since collective bargaining, the District has maintained that the period for differential pay runs concurrently with accumulated sick leave after exhausation of the 10 days of current sick leave. Prior to 1985, this was also

---

sion of law contained in Chapter 3 (commencing with Section 3110) of Division 4 of the Health and Safety Code. [¶] The provisions of Section 44977 relating to compensation, shall not apply to the first 10 days of absence on account of illness or accident of any such employee employed five days a week or to the proportion of 10 days of absence to which such employee employed less than five days a week is entitled hereunder on account of illness or accident or to such additional days granted by the governing board. Any employee shall have the right to utilize sick leave provided for in this section and the benefit provided by Section 44977 for absences necessitated by pregnancy, miscarriage, childbirth, and recovery therefrom."

[3] According to the assistant superintendent of personnel services for the District, Hampel had 136.5 days of sick leave at the beginning of the school year, 10 days of current leave and 126.5 days of accumulated leave.

NVEA's understanding. On March 7, 1985, however, the executive director of NVEA received a memorandum from the legal counsel of the California Teachers' Association (CTA) indicating that under recent court decisions[4] teachers were entitled to a full five months of differential pay after exhaustion of *all* other sick leave. The NVEA president then wrote to the District, stating that the existing practice was not in accordance with the court decisions and requesting bargaining to determine whether the District would agree to change the interpretation of the contract to allow the differential pay period to run consecutively to accumulated sick leave. The present action was instituted because the District disagreed with NVEA's reading of the case law and refused to alter its policy.

### DISCUSSION

Resolution of the question when the five-month period for differential pay begins to run requires us to interpret sections 44977 and 44978. ■ Under established principles of statutory construction, this court must ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*California Teachers' Assn.* v. *Governing Board, supra,* 145 Cal.App.3d 735, 740; *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155].) ■ "Whenever possible, effect should be given to the statute as a whole, and to its every word and clause so that no part or provision will become useless or meaningless, since it is presumed that every word and provision was intended to have some meaning and function." (*California Teachers' Assn.* v. *Parlier Unified School Dist., supra,* 157 Cal.App.3d 174, 179.) ■ The various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. (*Id.,* at p. 179; *California Teachers' Assn.* v. *Governing Board, supra,* 145 Cal.App.3d at p. 740; *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist., supra,* 21 Cal.3d at p. 659.) Although several cases have explored the relationship between sections 44977 and 44978, none have addressed the precise question before us.

■ "Sick leave under section 44978 and differential pay under section 44977 are distinct, mutually exclusive concepts. The first permits no deductions from the teacher's salary during absence and continues as long as the teacher has current and accumulated sick leave. The second concept—reduced compensation—comes into play only after sick leave has been ex-

---

[4] The letter cited *Jefferson Classroom Teachers Assn.* v. *Jefferson Elementary School Dist.* (1982) 137 Cal.App.3d 993 [187 Cal.Rptr. 542]; *California Teachers' Assn.* v. *Governing Board* (1983) 145 Cal.App.3d 735 [193 Cal.Rptr. 650]; *California Teachers' Assn.* v. *Parlier Unified School Dist.* (1984) 157 Cal.App.3d 174 [204 Cal.Rptr. 20].

hausted and permits the district to deduct the cost of a substitute teacher from the teacher's salary." (*California Teachers' Assn.* v. *Parlier Unified School Dist., supra,* 157 Cal.App.3d at p. 180.) These statutory provisions "work together to create a unified framework governing school district compensation of certificated employees during unavoidable absences caused by accident and illness. Their obvious purpose is to provide economic security to teachers who are unable to teach because of accident or illness." (*Id.,* at p. 179.)

While section 44977 clearly establishes the duration of the period for which teachers are entitled to differential pay, it says nothing about how this period relates to the period of sick leave under section 44978. Section 44978, however, states that "the provisions of Section 44977 relating to compensation, shall not apply to the first 10 days of absence on account of illness or accident of any [certificated] employee employed five days a week or to the proportion of 10 days of absence to which such employee employed less than five days a week is entitled hereunder on account of illness or accident or to such additional days granted by the governing board." This provision of section 44978 has been judicially seen as "a legislative attempt to 'clarify' . . . that a district may not deduct the cost of a substitute teacher from the absent teacher's salary during sick leave." (*California Teachers' Assn.* v. *Parlier Unified School Dist., supra,* 157 Cal.App.3d at p. 183.)

The question presented in *Parlier* was whether the 10-day limitation in section 44978 meant that a teacher who had exhausted sick leave must wait 10 days before being entitled to differential pay. The court noted 2 possible interpretations of the 10-day limitation in section 44978: first, that differential compensation may not be paid during the first 10 days of absence even if a teacher has no current or accumulated sick leave; or second, that a district may not deduct the cost of a substitute teacher during the first 10 days of absence. (157 Cal.App.3d at p. 180.) The first interpretation presented a problem because it might suggest that after the first 10 days a teacher with accumulated sick leave would be entitled to *both* sick pay and differential pay. (*Id.,* at p. 181.) The second interpretation, on the other hand, presented a problem because it might suggest that a district could deduct the cost of a substitute teacher after the first 10 days of absence even though the absent teacher was due more than 10 days of sick pay because of accumulated leave. (*Ibid.*) The court found both of these potential results unacceptable and interpreted the 10-day limitation to mean that substitute teacher pay could not be deducted for as long as the absent teacher was entitled to sick leave, whether 10 days of current leave or a longer accumulated leave. (*Id.,* at pp. 182-183.)

Appellants rely heavily on the language in which *Parlier* stated its holding: "We conclude that a teacher has a statutory right to differential compensation for any absence of five months or less, such pay to commence immediately upon exhaustion of all sick leave." (*Id.,* at p. 182.) Standing alone, this language implies that the five-month period for differential pay is to begin only after exhaustion of *accumulated* sick leave. The context of the statement, however, makes clear that the court was responding to suggestions that the 10-day limitation required a waiting period before differential pay could begin or that a district might be able to deduct substitute teacher costs during the period of an absent teacher's accumulated sick leave. (*Id.,* at pp. 182-183.) *Parlier* was concerned with *payments* of differential compensation and directly precludes any detraction from the full pay due a teacher with accumulated sick leave. It did not address the question of the *timing* of the period for differential pay.

Other cases construing sections 44977 and 44978 also define some parameters of the right to differential pay without directly addressing its starting date. *Jefferson Classroom Teachers Assn.* v. *Jefferson Elementary School Dist., supra,* 137 Cal.App.3d 993 was concerned with the type of illness or injury which would trigger the right to differential pay rather than the time for which the right would last. The court determined that differential compensation must be paid when a teacher is absent after exhaustion of sick leave whether the absence is due to a prolonged illness or injury continuing past the time sick leave is exhausted or to an unrelated illness or injury occurring after sick leave has been exhausted. (*Id.,* at pp. 998-999.) *California Teachers' Assn.* v. *Governing Board, supra,* 145 Cal.App.3d at pp. 746-747 held that there is a separate entitlement to five months of differential pay for each school year, even if the absence in a later year is due to the same illness or injury as the absence in a prior year. The case did not, however, consider whether in a given year the period for differential pay overlaps with the period of accumulated sick leave.

■ To accept appellants' argument that the period for differential pay should run consecutively to accumulated sick leave would be to ignore the provision in section 44978 expressly precluding application of section 44977 to the first 10 days of absence due to illness or injury. This limiting provision obviously refers to the period of current annual sick leave: it states that the differential pay statute shall not apply for the first 10 days of absence due to illness or injury for a full-time employee or to the proportion of 10 days of absence to which a part-time employee is entitled, precisely the period established in section 44978 for annual sick leave. Legislative history shows that as originally enacted the sick leave statute provided for five days of sick leave per year and the limiting provision precluded application of the

differential pay statute to the first five days of absence. (Stats. 1943, ch. 829, p. 2626; Stats. 1943, ch. 71, p. 579.) In subsequent amendments, the limiting provision has referred to five days when the statute provided for five days of annual sick leave and to ten days when the statute provided for ten days of such leave. (Stats. 1945, ch. 1146, § 1, p. 2186; Stats. 1947, ch. 743, § 1, p. 1798; Stats. 1953, ch. 525, § 1, p. 1777; Stats. 1955, ch. 157, § 1, p. 608; Stats. 1959, ch. 2, § 3, p. 956; Stats. 1975, ch. 914, § 2, p. 2017; Stats. 1976, ch. 1010, § 2, p. 3459; Stats. 1976, ch. 1011, p. 4581.) In all of these amendments, the statute has provided that unused annual sick leave should accumulate from year to year. Had the Legislature intended that the differential pay statute not apply during the period of accumulated sick leave rather than only during the period of current leave, it could easily have said so. ■ The fact that the limiting provision has always referred to the period of current sick leave despite various amendments of the statute generally is a strong indication of legislative intent that only the current sick leave period is entirely free of the application of section 44977. " 'The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended.' " (*San Diego Union* v. *City Council* (1983) 146 Cal.App.3d 947, 956 [196 Cal.Rptr. 45].)

■ The California Attorney General has consistently interpreted sections 44977 and 44978 to run concurrently after the first 10 days of absence, concluding that the 5-month period of differential pay begins at the end of the 10 days' current sick leave but that the employee receives full pay for as long as he or she is entitled to accumulated sick leave. (29 Ops.Cal.Atty.Gen. 62, 63 (1957); 30 Ops.Cal.Atty.Gen. 307, 309 (1957-1958); 53 Ops.Cal.Atty.Gen. 111, 113 (1970).) ■ Opinions of the Attorney General, while not binding, are entitled to great weight. (*Henderson* v. *Board of Education* (1978) 78 Cal.App.3d 875, 883 [144 Cal.Rptr. 568]; *Lucas* v. *Board of Trustees* (1971) 18 Cal.App.3d 988, 991-992 [96 Cal.Rptr. 431].) In the absence of controlling authority, these opinions are persuasive "since the Legislature is presumed to be cognizant of that construction of the statute." (*Henderson* v. *Board of Education, supra,* at p. 883, fn. omitted.)

■ Longstanding administrative practice also supports the view that differential pay and accumulated sick leave periods should run concurrently. The record in this case shows that a number of school districts in California have for many years interpreted sections 44977 and 44978 to require that the differential pay period run concurrently with accumulated

sick leave.[5] The declaration of the deputy superintendent of the administration branch of the State Department of Education states the department's view that waiting to commence differential pay until certificated employees have exhausted accumulated sick leave would have a substantial negative impact on the quantity and quality of direct instructional services to pupils because less money would be available for such purposes. ■ "The Legislature is presumed to be aware of a long-standing administrative practice . . . . If the Legislature . . . makes no substantial modifications to the act, there is a strong indication that the administrative practice was consistent with the legislative intent." *(Horn* v. *Swoap* (1974) 41 Cal.App.3d 375, 382 [116 Cal.Rptr. 113]; *El Dorado Oil Works* v. *McColgan* (1950) 34 Cal.2d 731, 739 [215 P.2d 4].)

■ Appellant urges that to require the differential pay period to run concurrently with an employee's accumulated sick leave is to penalize employees with good records of attendance while rewarding those with poor records: whereas employees who have used all their sick leave will receive a full five months of differential pay if they become injured or ill, those who have used none of their sick leave will receive less than five months of differential pay or none at all. Viewed this way, the District appears to obtain a windfall when an employee suffering an extended illness has significant accumulated sick leave. Section 44977, however, is best viewed as mandating a minimum measure of protection for employees required to sustain long absences due to illness or injury. At the same time as the statute provides for five months of differential compensation, it authorizes school districts to establish rules and regulations regarding compensation for employees absent for more than five months due to illness or injury. (§ 44977.) A district may, then, provide compensation for a longer period, but the statute ensures that no district will fail to compensate employees for at least five months.[6] Employees with sufficient accumulated sick leave will receive compensation in the amount of full salary; those without accumulated sick leave will receive only differential pay. There is simply nothing in

---

[5]Respondent introduced declarations from the superintendents of the Richland School District (rural), Sweetwater Union High School District (urban), and El Segundo Unified School District (urban); the personnel/payroll manager for the San Diego Unified School District (urban); the Vice Chancellor for Personnel Services for the Los Angeles Community College District (urban); and the Assistant Superintendent of Personnel Services for the Napa Valley Unified School District. The declarations indicate that these districts all count the period for differential pay concurrently with accumulated sick leave, the Sweetwater School District having done so for at least 26 years and the San Diego District for at least 16 years. The other declarations do not specify precise dates.

[6]Indeed, a district is required to pay five months differential compensation to teachers without current or accumulated sick leave even though the absence occurs before any service has been rendered during the school year. *(Lakeside Federation of Teachers* v. *Board of Trustees* (1977) 68 Cal.App.3d 609, 612, 620 [137 Cal.Rptr. 517].)

sections 44977 and 44978 to indicate that the Legislature meant the period for differential pay to begin after exhaustion of all accumulated sick leave.

The judgment is affirmed.

Rouse, J., and Smith, J., concurred.